[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS #113 MOTION TO STAY PROCEEDINGS #114 COUNTERCLAIM, ORDER TO COMPEL ARBITRATION #115 MOTION TO STAY PROCEEDINGS #120 MOTION TO COMPEL ARBITRATION #120.5
 I MOTION TO DISMISS
The plaintiff, Ronald Dodsworth, filed a twelve-count complaint on May 5, 1999, against fifteen defendants alleging numerous claims, all of which stem from his termination of employment as the manager and chief CT Page 5622 executive officer of the Greater Bridgeport Transit District (GBTD). It is undisputed that Dodsworth entered into an employment agreement with GBTD pursuant to a signed, written contract dated February 13, 1996, which contained an arbitration clause.[1] On August 26, 1999, one of the defendants, Greater Bridgeport Transit Authority (GBTA) filed a motion to dismiss on the ground that the, court lacks subject-matter jurisdiction.
The GBTA argues that pursuant to Dodsworth's employment contract, arbitration is a condition precedent to bringing a claim in a court of law. The GBTA argues that the arbitration clause deprives the court of jurisdiction. "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action." Practice Book § 10-33. "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Doev. Roe, 246 Conn. 652, 661, 717 A.2d 706 (1998). "[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.) Doweling v. Slotnick, 244 Conn. 781,787, 712 A.2d 396 (1998).
"[A] motion to dismiss is the appropriate procedural vehicle for raising the claim that a plaintiff failed to submit a contract claimed to arbitration before filing a lawsuit." KCK, Inc. v. Matthews Ventures, Superior Court, judicial district of New Haven at Meriden, Docket No. 248439 (January 16, 1996, Silbert, J.). "Whether an agreement makes arbitration a condition precedent to an action in court depends on the language of the arbitration clause. . . . The mere agreement to arbitrate, standing alone, does not give rise to the necessary implication that arbitration is a condition precedent to an action in court. For arbitration to be a condition precedent, the agreement to arbitrate must expressly so stipulate. . . ." Mutli-Service Contractors,Inc. v. Vernon, 181 Conn. 445, 447-48, 435 A.2d 983 (1980).
Here, the arbitration provision in the contract is plain and unambiguous on its face. It reads in its entirety: "All claims, disputes and other matters in this agreement will be resolved by Arbitration in accordance with and pursuant to the American Arbitration Association." (Contract, § 14, ¶ I.)
The language of the contract between Dodsworth and GBTD does not explicitly require arbitration as a condition precedent to bringing a claim at law. Accordingly, the motion to dismiss is denied. SeeMulti-Service Contractors, Inc. v. Vernon, supra, 181 Conn. 447-48. CT Page 5623
 II MOTIONS TO STAY PROCEEDINGS (#114, #120)
On August 26, 1999, the GBTA filed a motion to stay proceedings. On October 7, 1999, the GBTD and the individually named defendants[2]
also filed a motion to stay proceedings.
All defendants participating in the motions maintain that this action should be stayed pending arbitration because Dodsworth is a party to a written arbitration agreement, there are issues that are properly referable to arbitration, and the defendants are ready and willing to proceed with arbitration. Section 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making the application for the stay shall be ready and willing to proceed with the arbitration."
In the present case, the only dispute is whether there are any issues involved that are properly referable to arbitration. The defendants argue that the arbitration provision encompasses all of the issues involved, and therefore, all are referable to arbitration.[3]
Dodsworth argues that the arbitration provision does not encompass his constitutional, statutory, and tort claims, as a matter of public policy. Dodsworth further argues because these type of claims are not specifically enumerated, they are not referable to arbitration. Dodsworth also argues that there is an ambiguity in the contract as to the breadth and duration of the arbitration clause, and such a question of arbitrability itself is not a matter properly referable to arbitration.
"[T]hreshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute." (Internal quotation marks omitted.) White v. Kampner, 229 Conn. 465, 476,641 A.2d 1381 (1994). "`The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as "all questions in dispute and all claims arising out of" the contract or "any dispute that cannot be adjudicated."'" Welch Group, Inc. v.CT Page 5624Creative Drywall, Inc., 215 Conn. 464, 467, 576 A.2d 153 (1990); see also, Scinto v. Sosin, 51 Conn. App. 222, 227-28, 721 A.2d 552 (1998). "[D]oubts regarding whether an issue is arbitrable should be resolved in favor of arbitration." Fink v. Golenbock, 238 Conn. 183, 195, 680 A.2d 1243
(1996).
Here, the arbitration clause in the contract is broad. It is also plain and unambiguous on its face. It states: "All claims, disputes, and other matters in this agreement will be resolved by Arbitration in accordance with and pursuant to the American Arbitration Association." (Contract, § 14, ¶ I.) Intent to arbitrate the issue of arbitrability can be found in this broad language. See Welch Group, Inc.v. Creative Drywall, Inc., supra, 215 Conn. 467.
This court is satisfied that there is an issue that is properly referable to arbitration, and that is the issue of arbitrability itself. All of the participating defendants have shown that they are ready and willing to proceed with arbitration, and therefore, the court is compelled by General Statutes § 52-409 to stay these proceedings pending arbitration as provided for in the written agreement.
 III DECLARATORY JUDGMENT (#115)
GBTA filed a counterclaim against Dodsworth seeking a declaratory judgment, that he is bound to arbitrate his dispute with the GBTA. The counterclaim, which served to give Dodsworth notice of the independent action, was filed on August 26, 1999.[4]
"The purpose of a declaratory judgment, action, as authorized by General Statutes § 52-29 and Practice Book § [17-55], is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Internal quotation marks omitted.) Bombero v. Planning andZoning Commission, 40 Conn. App. 75, 78, 669 A.2d 598 (1996).[5]
GBTA brought the counterclaim pursuant to General Statutes § 52-410. "Section 52-410 creates an independent action that can be instituted only by a properly served writ of summons and complaint." SuccessCenters v. Huntington Learning Centers, Inc., 223 Conn. 761, 768,613 A.2d 1320 (1992). Section 52-410 (a) provides in pertinent part: "A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make an application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their CT Page 5625 agreement."
GBTA's counterclaim alleges both that they are a party to a written arbitration agreement and that Dodsworth has refused to proceed with arbitration. The prayer for relief states with specificity that a declaratory judgment is sought, pursuant to Practice Book § 17-56
(a)(2).[6]
The court determines that Dodsworth is bound to arbitrate his dispute with Greater Bridgeport Transit Authority and the other named defendants because of the unambiguous language of the contract between Dodsworth and GBTD.
 IV MOTIONS TO COMPEL ARBITRATION (#115, #120.5)
The defendants move to compel arbitration in their dispute with Dodsworth. Pursuant to Practice Book § 17-56(a)(3), GBTA attached its motion to its counterclaim. On October 7, 1999, GBTD and the individually names defendants filed their motion to compel along with their motion to stay proceedings.
As a threshold matter, GBTA has the right to enforce the contract. See footnote 4 of this memorandum. Similarly, GBTD, as a party to the contract, may enforce it. See General Statutes § 52-409. Dodsworth argues that the individually named defendants, as members of the board of directors, were neither parties to the contract, nor contemplated to be beneficiaries of the contract, and therefore cannot enforce its provisions.
The Supreme Court has observed "that while § 52-410 `limits the availability of the remedy to "parties" . . . the word is not defined.' We [conclude] that `[t]he term is used generically' so that its `meaning must therefore be derived from the agreement itself.'" Gaudet v. Safeco,Ins. Co., 219 Conn. 391, 397, 593 A.2d 1362 (1991). Further, the court [construed] the word `party' within § 52-410 to refer to anyone on whom the agreement confers enforcement rights." Gaudet v. Safeco, Ins.Co., supra, 219 Conn. 397. The contract is replete with references to the board of directors; some seven times within the contract, and six more, in the job description appended thereto. The contract was approved by the Board, signed by the chairman of the board, and witnessed, at least in part, by Walter Auger, a named defendant. Dodsworth was to report to the board, and the board was to ensure that Dodsworth performed his duties within the bounds of his contract. In short, the contract gives the board enforcement rights with respect to the CT Page 5626 performance of the contract. Indeed, section one, paragraph A states: "Employer hereby employs, engages, and hires Employee as the General Manager to the Greater Bridgeport Transit District and Employee hereby accepts and agrees to such hiring, engagement, and employment, subjectto the general supervision and pursuant to the orders, advice anddirection of Employer acting through its Board of Directors . . ." (Emphasis added.) As further evidence of the prominent role the board was to play, Dodsworth was to submit to the board any changes to be made in the terms and conditions of the contract itself. (Contract, § 5, ¶ B.) The individually named defendants, therefore, as members of the board of directors are entitled to enforcement, as contemplated in the contract.
In determining whether a dispute is subject to the arbitration provisions in the contract, "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positiveassurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Citations omitted; emphasis in original; internal quotation marks omitted.) Fink v. Golenbock, supra,238 Conn. 195. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.) Scinto v. Sosin, supra, 51 Conn. App. 229.
Dodsworth argues that the arbitration clause applies only to disputes arising during the course of the employment. He cites for this proposition section fourteen, paragraph G, of the contract. Dodsworth further maintains that this provision renders the contract ambiguous as to the breadth of arbitration. Section fourteen, paragraph G of the employment contract states that: "For any provision to be enforced in this Agreement would require that it survive the termination of this agreement, then for that purpose that provision and other associated provisions will be deemed to so have survived and extended beyond the termination date of this agreement until such time as the matter is fully resolved by both parties, either in a joint writing, or by a Court of Law or Board of Arbitration." Dodsworth argues that in order to give meaning to both this provision and the arbitration clause, the only reasonable interpretation is that the parties intended that matters in dispute during employment be settled through arbitration, while matters arising afterward (such as the present claims) be settled in a court of law. Such a reading in untenable. If the court adopts this construction CT Page 5627 of the contract, it would essentially mean that all provisions of the contract survive the termination of the employment except the arbitration provision.
"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) 24 Leggett Street Ltd. Partnership v. BeaconIndustries, Inc., 239 Conn. 284, 294-95, 685 A.2d 305 (1996).
As previously stated, the arbitration clause in the employment contract is unambiguous and unrestricted. See Part II B of this memorandum. Likewise, the "survival" provision is also unambiguous. The latter provision unambiguously states that the arbitration provision survives the contract and therefore, it is enforceable.
Dodsworth also argues that certain specific claims, the constitutional, statutory, and tort claims, are not subject to arbitration because he did not specifically agree to them. This argument is without merit because in the absence of explicit language to the contrary the arbitration clause is unrestricted. See Scinto v. Sosin, supra,51 Conn. App. 229.
The arbitration provision of the employment contract is plain, unambiguous, and unrestricted. Pursuant to General Statutes § 52-408, written arbitration agreements are "valid, irrevocable, and enforceable, except where there exists sufficient cause at law or in equity for the avoidance of written contracts generally." Therefore, the motions to compel arbitration are granted.
 IV REQUEST FOR AN EVIDENTIARY HEARING
During short calender arguments on February 28, 2000, Dodsworth's attorney requested an evidentiary hearing to determine disputed issues CT Page 5628 of fact. (Transcript of Short Calender Hearing, February 28, 2000, p. 1 lines 11-14.) Dodsworth argues that the court must determine the intent of the parties in order to determine the scope of the arbitration clause because it is inherently ambiguous. Dodsworth's request encompasses two separate motions. The first is GBTA's motion to dismiss. The second is Dodsworth's equitable defenses to the motions to compel arbitration.
GBTA grounded the motion to dismiss, as discussed above in Part I, B of this memorandum, on lack of subject matter jurisdiction. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 56, 459 A.2d 503
(1983). In the present case, there is no need for such a hearing because the language of the contract is clear and unambiguous. See discussion in Part I and III of this memorandum. "Although ordinarily the question of contract interpretation being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) Issler v. Issler, 250 Conn. 226, 235, 737 A.2d 383
(1999).
Dodsworth's equitable defenses of estoppel, laches, waiver, and bad faith require factual inquiry. See New York Annual Conference v. Fisher,182 Conn. 272, 300, 438 A.2d 62 (1980); Hartford v. American ArbitrationAssoc., 174 Conn. 472, 476, 391 A.2d 137 (1978). However, as previously states in Part II of this memorandum, issues of arbitrability are for the arbitrator when the language in the contract is broad. See WelchGroup, Inc. v. Creative Drywall, Inc., supra, 215 Conn. 467. Therefore, it is for the court to decide if the defenses are arbitrable. Scinto v.Sosin, supra, 51 Conn. App. 227-28. In the present case, the court determines that the merits of Dodsworth's equitable defenses are arbitrable due to the broad nature of the arbitration clause, and therefore the court denies Dodsworth request for an evidentiary hearing on the merits of the equitable defenses.
 V Constitutional and Statutory Claims
Dodsworth argues that it would be a violation of public policy to compel him to arbitrate his constitutional and statutory claims. Dodsworth relies on General Statutes § 31-51bb for the proposition that employees have a right to pursue a cause of action arising under the state or federal constitution. However, that statute explicitly CT Page 5629 limits the class of people it intends to protect to those who are covered by collective bargaining agreement.[7] The cases cited by Dodsworth are likewise unpersuasive. This is not a case of collective bargaining.[8] The plaintiff voluntarily entered into an individual agreement into which he negotiated an arbitration provision. (Plaintiff's Complaint, Count 1, ¶ 14, Plaintiff's Memorandum in Support of Objection to Motions to Dismiss, Stay Proceedings and Compel Arbitration, p. 3.) Dodsworth cites no authority for his contention that collective bargaining agreements are equivalent to private individual contracts. "When a memorandum of law fails to cite any legal authority, the memorandum is functionally equivalent to no memorandum at all." (Internal quotation marks omitted.) Midlantic National Bank v.Clack-Blye, Superior Court, judicial district of Danbury, Docket No. 315210 (April 3, 1995, Leheny, J.)
 VI Order
The defendants' motions to stay proceedings and motions to compel arbitration are granted. GBTA's motion to dismiss is denied. The court orders plaintiff Dodsworth to proceed to arbitration, as he is bound by his contract.
JOHN W. MORAN, JUDGE.